Ashburn, J.
It is claimed by plaintiff in error (defendant below) that there is manifest error in the refusal of the court to charge the jury as requested by him, and also in the charge as given.
The bill of exceptions does not contain all the testimony given at the trial, nor the entire charge of the court to the jury. For this reason, an instruction given or refused involving a question of fact as well as a principle of law, and for want of a full knowledge of the facts it is not clear what the charge, as to the law, should have been, the question must be considered more strongly in favor of sustaining than in overthrowing the j udgment.
In questions involving the rescission of a contract, it is frequently difficult to apply arbitrary rules, as each case depends greatly on its own facts and circumstances ; where, however; distinct general principles have been established; *16 and they can be properly applied to the facts of the case under consideration, they should be adhered to.
Plaintiff in error, in his brief, omits to discuss any question supposed to be involved in “ 1st Request,” and “ Modification No. 1.” We take it he has abandoned any objection he may have had in relation thereto. If we are mistaken as to that, we are clear in the opinion there was no error in the rulings of the court below.
“ 2d Bequest. — The plaintiff was bound to exercise reasonable diligence to ascertain about Sears’ representations, and to rescind in a reasonable time; and, in the absence of proof tending to show that so long a period was necessary, six months is not a reasonable time.”
This was given with this modification : that the court left the time to the jury, and declined to say that six months is not a reasonable time. The court also charged, that neither party would ordinarily have a right to bring suit on the Henderson" note before the same became due, and the court declined to say, as matter of law, that the Henderson note must be tendered back before maturity, or that the estate would be damaged necessarily by not tendering it back before it fell due, but it must be tendered back, at farthest, so soon after the discovery of fraud (in which plaintiff' must use reasonable diligence), that the estate would not be damaged by delay, and could be put in statu quo.
To which refusal to give the request unqualified, and to the above qualifications, which the court gave to the jury asmbove stated, the defendant excepted.
"We think there was no error in refusing to give the instruction as requested, nor in giving it with the modification. As asked in this case, its tendency would have been to mislead the jury. It assumes that six months had elapsed from the time the fraud was discovered and the offer to rescind; it further assumes that six months was too long a period in this case in the absence of proof to show its necessity, and that there was such absence of proof. *17 We find no proofs in the record to support either assumption.
Adolph alleges in his petition that, at the time of the exchange of notes, Sears, as administrator, fraudulently represented to him that Henderson was solvent and possessed of a large amount of property; that the note was collectable, and that he could receive his money much sooner from the Henderson note than from the notes he held against Merrill’s estate. This representation was in April, 1869, and there is no proof whatever at what time Adolph discovered the alleged fraud in relation to Sears’' representations. He had no known legal cause for rescission of the contract until the fraud was discovered. In the absence of proof touching that matter, this court will presume the supposed discovery of the fraud and the offer to' rescind were concurrent acts. In this state of the proof, or rather want of proof, the “Request” was an abstract proposition, and the court not required to give it.
As a general rule, where time becomes an essential of a right to recover, involving the question of diligence, it is^ the duty of the court to instruct the jury specifically on that question. There are cases in which the matter of time, like any other fact, may properly be left to the jury. This case, from the state of the proofs, was one of them. The court, properly, we think, said to the jury in the qualification : “ But it must be tendered back, at farthest, so soon after the discovery of the fraud (in which plaintiff must use reasonable diligence) that the estate would not be damaged by delay, and could be put in statu quo.” We do not see how the plaintiff in error could have been prejudiced by this qualification.
“ 3d Request. — Plaintiff can not rescind and sue on the original notes, unless he can place the defendant in the same situation he was in at the time of the trade ; and if, after the plaintiff learned of Henderson’s failure, he proved up his claim in bankruptcy, he is not entitled to recover *18 under the pleadings, which instruction the coui’t refused to give, and the defendant excepted.”
The first clause of this request, the court had substantially given to the jury in the closing part of “Modification 1,” to “2d Request,” and might properly refuse to give It again as part of another request.
As presented to us, the solution of this question depends upon the state of the proofs under the pleadings. If Adolph, after he discovered the false and fraudulent character of the representations made by Sears to induce the contract for the exchange of notes, proved up his claim on the Henderson note in a court of bankruptcy, he would, after that, be precluded from a rescission of the ■ contract. Such appropriation of the claim as his own, after the discovery of the fraud, would bar his right to a rescission of the contract. It would be acting with a knowledge of his legal rights.
The rule is, that he who would rescind the contract must ■offer to do so promptly on discovering the facts that will justify a rescission, and while he is able of himself, or by the judgment of the court, to place the opposite party substantially in statu quo.
The evidence on the record does not show a want of diligence on the part of Adolph in his offer to rescind; nor that he did any act after the discovery of the alleged fraud that would preclude him from asserting his claim to a rescission. He proved his claim in bankruptcy November 22,1869, and the proofs on the record entirely fail to show that he discovered, prior to that time, that the alleged representations made by Sears were fraudulent. In the absence of proof, this court will not presume, against the judgment, that the discovery was prior ; but, in support of the judgment, will presume the evidence upon the trial ■showed the discovery was made subsequent to proving the •claim in bankruptcy.
If the allegations in the petition are true, that Henderson was insolvent when the exchange of notes took place, and remained so up to the commencement of this action, *19 the estate of Merrill could lose nothing by either delay or proving the claim in bankruptcy. Proving such a claim would be no hinderanee to placing the parties in statu quo.
And thereupon the court charged the jury, among other things, as ■ follows :
“ If a man makes a representation that a third party is pecuniarily responsible, and yet he has no knowledge on that subject, but makes the statement recklessly, and it turns out that said third party is not as represented, the man is responsible in the same way that he would have been if he had known that the party was without property. To illustrate : Suppose you are inquired of as to the pecuniary means of John Jones, of Cleveland, a man of whom you are entirely ignorant, and you recklessly represent him to be good and entitled to credit, and it turns out, upon inquiry that Jones is a bankrupt. You stand in the same position in law that you would have occupied had you known him to be a bankrupt. Applying that principle to the case before us, if Mr. Sears, to induce this exchange with plaintifF, represented to the latter that Henderson had $4,000 to $5,000 of money at interest, and yet had no knowledge upon the subject, but made the statement recklessly, and if Henderson had not any money at interest, Sears would stand in the same position that he would have been in had he known that Henderson had no money at interest.
“ If Sears made this representation as of his own knowledge, and yet had no knowledge on the subject, he stands the same as if he had knowledge of the actual fact.”
“áth Bequest. — Immediately after the-jury retired, the defendant asked the court to recall the jury, and, by way of qualification of the foregoing, instruct them that if they found that Sears made the representations above set forth, and honestly believed them to be true, then he -would not be guilty of fraud or recklessness, unless something more appeared. Which request the court refused to give, to which refusal the defendant excepted, and also excepted to *20 the foregoing charge, as given in both the first and second propositions, and all of it.”
We discover no error in the charge.
Was there error in refusing to give the jury the qualification asked in the “ 4th Request ? ”
This request is based upon the 'idea that, where a party simply believes in the truth of a representation made by him upon which another parts with his property or rights, he will not be guilty of fraud or gross negligence. This doctrine appears to be sound where the question of the credit of the party recommended is involved, and nothing more. Such recommendations are generally understood to be nothing more than the opinion of those who give them, resting upon common reputation, and the apparent cireumstances'of the individual recommended, and not upon any examination of his affairs. And it is well known that men who are apparently in good circumstances and credit, turn out to be, in reality, insolvent. In such cases, a recommendation of that kind should not be presumed fraudulent because it happens not to be true. But the rule is otherwise where the false representation induces the contract between the parties thereto and enters into it.
It is otherwise where the party making the false representations is bound to know the truth of his representations; then mere belief in their truth will not excuse. One is responsible for his belief in case where a prudent person might know the truth of the facts upon which his supposed belief is founded.
The rule laid down in Taylor v. Luthe, 26 Ohio St. 428, is applicable here. It is: “ If the representations on which the action is founded were, when made, believed to be true, and the facts of the case are such as to justify the belief, there would be no fraud, and there could be no recovery.”
The court did not err in refusing, to give in charge to the jury the qualification asked. It was not a complete state, rnent of the law on the question involved, and to the extent that it was not the law, would, if given, have probably misled the jury.
*21 Where a party, from the nature of the transaction and his relation to the parties and the facts are such that he is chargeable with a knowledge of the truth of the representations he makes, if they are false, he can not escape liability by saying he believed them to be true. It was his duty to know whether they were true, and his belief will not excuse him from liability to the person injured thereby, unless the facts will reasonably justify a prudent man in such belief.
The record shows that, “ March. 10, 1869, Sears, as administrator, sold the personal property of the estate of Wm. Merrill, deceased, at public auction, and took notes therefor, among which was a note for $285, dated March 10, 1869, due in nine months, with interest, payable to the order of Edward Sears, administrator of Wm. Merrill’s estate, and signed by J. S. Henderson.” This was the note that passed to Adolph. The law governing such sales of personal property requires that “ notes or bonds, with two or more approved sureties, shall in all such cases be taken by the executor or administrator.” (1 S. & C. 579, sec. 24.) Sears having failed to require Henderson to give him a note with two approved sureties, he was in duty bound to know that Henderson was solvent, or be chargeable with gross negligence.
At the time of the exchange of notes, Sears knew that the estate of Merrill would be ample to pay the notes held by Adolph against it. It would be his duty, as administrator, in due time, to pay them in full, and when he made the exchange of notes he was charged with knowing that the unsecured Henderson note was of value to decedent’s estate, dollar for dollar, with the notes held by Adolph.,
Considering the facts and circumstances disclosed in the record, and the presumptions deducible from them, it requires no great effort to credit the'statement of plaintiff below, that “ to induce him to take said note and make the trade, said Sears represented to him that said Henderson was good; that he had five thousand dollars at interest; *22 that he, Sears, would warrant the note good and get an undersigner, or surety.”
In support of his view of this question, we are referred, by counsel for plaintiff in error, to several authorities ; but he seems to rely chiefly upon the carefully considered case of Haycroft v. Creasy, 2 East. 92. This case has not always been followed as authority, and its conclusions were rejected in Hazard v. Irwin et al., 18 Pickering. Haycroft v. Creasy, was a case in which the defendant was charged as having fraudulently, upon his own knowledge, recommended a third person as entitled to credit. It was decided by a divided court, each judge giving an opinion. The facts of that case, when examined, will be found to differ in many respects from this one. The judges who held the defendant was not liable, did so upon the ground that the element of deceit did not enter into his representations, and that from the subject-matter of the representation, that of the ability and solvency of a third person, it could only be a matter of opinion and judgment, and though he said he knew it of his own knowledge, nothing more could be understood than that he had the strongest belief in the assertion.
Lord Kenyon, C. J., said : “ The defendant affirmed that to be true within his own knowledge which he did not know to be true. This was fraudulent, not perhaps in that sense which affixes the stain of moral turpitude on the mind of the party, but falling within the- notion of legal fraud.’»
Grose, J., said : “And, taking the whole together, I think the evidence goes no further than his asserting that to be-his firm belief and conviction she was deserving of credit and that the defendant was himself a dupe to appearances.”
Lawrence, J., said: “If this ease had gone to the jury on the ground of fraud, I can not say there would have-been no evidence to support the verdict.”
Thus construing an assertion of actual knowledge into mere belief.
*23 On the whole ease we discover no substantial error in the action of the court of common pleas.
Judgment of the court of common pleas affirmed, and cause remanded to that court for execution.
Scott, Chief Judge, Day, 'Wright, and Johnson, JJ., concurred.